UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

305 EAST 61st STREET GROUP LLC,

22-CV-9783 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

Appellant Little Hearts Marks Family II, LLP ("Little Hearts")—an equity member of 305 East 61st Street Group LLC ("Debtor"), which is currently engaged in Chapter 11 bankruptcy proceedings—filed this appeal challenging the Bankruptcy Court's dismissal of a Complaint filed in New York state court (and subsequently removed to the Bankruptcy Court) stating causes of action against Appellees Jason D. Carter and 61 Prime LLC.[1]  Specifically, the Bankruptcy Court dismissed the Complaint after finding that Appellant lacked standing to bring the causes of action. *See In re: 305 East 61st Street Group LLC*, 644 B.R. 75 (Bankr. S.D.N.Y. 2022).  For the reasons set forth below, because the Bankruptcy Court correctly found that the causes of action pleaded in the Complaint were derivative claims—that is, claims which seek "to recover for injury to the business entity" generally, rather than for "redress for injury to [Appellant] individually," *Yudell v. Gilbert*, 99 A.D.3d 108, 113 (N.Y. App. Div. 2012)—Appellant lacks standing to pursue them given the Debtor's ongoing bankruptcy. The order of the Bankruptcy Court dismissing the Complaint is therefore affirmed.

---

[1]      By a separate Memorandum Opinion and Order issued today, the Court separately affirmed the Bankruptcy Court's approval of a settlement agreement pursuant to Bankruptcy Rule 9019 regarding the Debtor's remaining assets.  *See In re: 305 East 61st Street Group LLC*, No. 23-cv-80.

## BACKGROUND

The Debtor in the underlying bankruptcy proceedings, 305 East 61st Street Group LLC, owned a ten-story former warehouse building in Manhattan which was acquired for conversion into a condominium.[2]   The Debtor, in turn, was owned by four members: (1) 61 Prime LLC ("Prime"); (2) Little Hearts; (3) Thaddeus Pollock; and (4) Onestone 305 LLC ("Onestone"). Prime, whose sole member and manager is Jason Carter, held a 50% ownership interest in the Debtor.   Little Hearts, whose principal is Mitchell Marks, held a 30% ownership interest in the Debtor and also served as its manager.   Pollock and Onestone each held a 10% ownership interest.

The members executed an Operating Agreement which assigned to each member specific floors of the building, and required each member to assume responsibility for payment of a portion of the mortgage on the building as part of their capital contributions to the conversion project. Compl. ¶ 22.   Under those terms, Prime was required to pay 5/8ths of the mortgage, and each of Little Hearts, Pollack, and Onestone were required to pay 1/8th of the mortgage.   *Id*. ¶ 23.   The Operating Agreement also assigned a percentage of membership in the Debtor to each member in exchange for their investment, and provided that each member would have the right to acquire and retain, use, occupy, and develop one or more floors of the building, roughly equal to one floor for each ten percent of equity.   *Id*. ¶ 28.   Prime therefore acquired exclusive rights to the 4th, 5th, 6th, 7th, and 9th floors, *id*. ¶ 30; Little Hearts acquired exclusive rights to the "basement/cellar" and 1st floor, 2nd floor, 10th floor, and roof, *id*. ¶ 29; Pollock acquired exclusive rights to the 3rd floor, *id*. ¶ 31; and Onestone acquired exclusive rights to the 8th floor, *id*. ¶ 32.   The Operating

---

[2]       These facts are taken from the Complaint filed by Appellant in New York State court and subsequently removed to the Bankruptcy Court, *see Little Hearts Marks Family II L.P. v. Jason D. Carter and 61 Prime LLC*, Index No. 652410/2021, and, because this appeal arises from a decision on a motion to dismiss, the allegations contained therein are assumed to be true, *see In re ICP Strategic Credit Income Fund Ltd.*, 568 B.R. 596, 605–06 & n.6 (S.D.N.Y. 2017).

Agreement further set forth a priority for the distribution of proceeds in the event that a unit in the building was sold.  *See* Operating Agreement § 21.2.  Under those terms, any profits that the members recognized from the sale of a unit would go first to the Debtor generally, and—only after a member's obligations to the Debtor were fully paid—then to a member on an individual basis.

The members have a particularly litigious history.  *See, e.g., In re 305 East 61st St. Grp. LLC*, 644 B.R. 75, 78–80 (Bankr. S.D.N.Y. 2022) (detailing the years-long legal battle between the equity members for control of the Debtor).  To briefly summarize: first, while under the management of Little Hearts, the Debtor brought an action against Prime in New York State court in spring 2018, alleging that Prime had refused to pay $62,500 of its original subscription to the Debtor.  Compl. ¶ 39 (citing *305 East 61st Street Group LLC v. 61 Prime LLC*, Index No. 652934/2018).  In July 2018, Prime and its principal, Carter, brought a separate action in New York State court (hereafter, the "Prime Action") against Little Hearts and its principal, Marks, alleging that they had violated the Operating Agreement by, among other things, misappropriating a portion of construction loan proceeds and misappropriating the unexcavated land below Debtor's building.  *Id.* ¶¶ 41–42 (citing *61 Prime LLC, et al. v. Little Hearts Marks Family II, LP, et al.*, Index No. 653281/2018).  The court in the Prime Action issued a temporary restraining order removing Little Hearts as manager of the Debtor and substituting Prime in its place.  *Id.* ¶ 44. Little Hearts and Marks thereafter brought an action in August 2018 in New York State court (the "Little Hearts Action") alleging that Prime and Carter had improperly removed it as manager, and that Prime and Carter had mismanaged the property, purportedly causing violations to be issued by the Department of Buildings of the City of New York.  *See Little Hearts Marks Family II, LP v. 61 Prime LLC, et al.*, Index No. 654198/2018; *see also* Compl. ¶ 64.

In June 2019, the fraught history of the Debtor reached a breaking point, and it filed a

petition for relief under Chapter 11 of the Bankruptcy Code.  Bankr. Dkt. 1.  Upon the filing of the

petition, both the Prime Action and the Little Hearts Action were automatically stayed, as required

by 11 U.S.C. § 362.  In view of the equity members' litigious history and rivaling interests

regarding the Debtor's remaining assets, the Bankruptcy Court eventually appointed Kenneth P.

Silverman as the Chapter 11 Trustee to administer the Debtor's bankruptcy estate.  *See* Bankr. Dkt.

79 at 3 (Memorandum Decision recounting that appointment of a neutral third party as trustee was

necessary because "the equity members could not agree on a path forward for the Debtor").  The

Chapter 11 Trustee later filed a plan of liquidation (the "Plan"), which was confirmed by an order

of the Bankruptcy Court, and which established a trust (the "Creditor Trust") into which all of the

Debtor's remaining assets—including causes of action held by the Debtor—were transferred.

Silverman, already the Chapter 11 Trustee, also assumed the role of Creditor Trustee.

Following the automatic stay of the Little Hearts Action against Prime and Carter, Little

Hearts then brought an adversary proceeding in the Bankruptcy Court against the Debtor seeking

a declaratory judgment and injunctive relief, as well as claims asserting breach of contract and

breach of implied covenant of good faith and fair dealing.  In August 2019, Little Hearts also filed

a proof of claim against the Debtor in its Chapter 11 proceedings in the amount of $12 million.

The proof of claim included language directly tying Little Hearts' claims against the Debtor to its

existing claims against Prime and Carter:

> [I]f it is determined that Prime and Mr. Carter are not individually liable to Claimant
> for their actions or inactions, the Claimant asserts claims against the Debtor for
> monetary damages arising from the Debtor's breaches of the Operating Agreement
> by, *inter alia*, failing to timely complete the Project (defined below), pay off its
> mortgages, and secure approval of a condominium offering plan, as expressly
> contemplated by the Operating Agreement; causing or permitting damage to
> Claimant's condominium units and other portions of the Building (defined below);
> and other losses suffered by the Claimant.

Bankr. Rec. 245–56, Proof of Claim at ¶ 4.  In October 2019, Little Hearts then moved for the stay

in the Little Hearts Action to be lifted.  *See* Bankr. Dkt. 66.  Notably, in that motion, Little Hearts

acknowledged that its claims against Prime and Carter were effectively the same claims that it had

also asserted against the Debtor's estate:

> [Little Hearts] intends to assert claims . . . against Prime and Mr. Carter arising
> from their actions in failing to complete the Project, failing to obtain approval of
> the condominium offering, and permitting the Mortgage to mature without being
> timely refinanced or paid off.  If the State Court rules in the Marks Parties' favor
> on the claims or counterclaims, then Prime and Carter (and not the Debtor) will be
> liable for Marks LP's damages.  If, on the other hand, the State Court determines
> that Prime and Mr. Carter acted properly, then Marks LP's claims against the
> Debtor . . . would continue to exist.

Bankr. Dkt. 66, Mot. to Lift Stay at ¶¶ 27–28.

Of particular relevance for purposes of the present appeal: in April 2021, Little Hearts filed

a new complaint (the "Complaint") in New York State court, bringing causes of action against

Prime and Carter, Appellees here.  *See Little Hearts Marks Family II L.P. v. Jason D. Carter and

61 Prime LLC*, Index No. 652410/2021.  Appellees filed a notice of removal to the Bankruptcy

Court in May 2021, and subsequently moved to dismiss the Complaint.  In their motion to dismiss,

Appellees argued that Little Hearts was enjoined from pursuing its causes of action because they

belonged solely to the Creditor Trust pursuant to the Plan approved by the Bankruptcy Court.  *See*

Mot. at ¶ 27.  More specifically, Appellees argued that Little Hearts' claims were each ultimately

grounded in mismanagement of the Debtor, making them derivative claims to an entity involved

in a bankruptcy proceeding.  *Id*. ¶ 7.  Appellees further argued that the harm allegedly suffered by

Little Hearts in the Complaint would be the same harm purportedly suffered by the Debtor and

other members.  *Id*. ¶ 39.

In October 2022, after oral argument, the Bankruptcy Court issued a Memorandum

Decision and Order granting Appellees' motion to dismiss the Complaint.  *See In re 305 East 61st

Street Grp. LLC*, 644 B.R. 75 (Bankr. S.D.N.Y. 2022).  The Court held that Little Hearts lacked

standing to pursue each cause of action in the Complaint against Appellees, given that the fundamental allegation underlying each claim entailed the alleged mismanagement of the Debtor. *Id*. at 86–93.  The Bankruptcy Court further found that the effects of Appellees' alleged wrongful conduct impacted the Debtor and/or all members' rights, rather than Little Hearts independently. *Id*.  It concluded that "the damages asserted in the Complaint flow[ed] directly from the Defendants' actions upon the Company's operations and [were] experience[d] by all members with respect to their designated units."  *Id*. at 89.  The Bankruptcy Court thus held that Little Hearts lacked standing to assert the claims in the Complaint, which were instead properly vested exclusively with the Creditor Trust.  *Id*. at 87, 93.  Accordingly, the Bankruptcy Court dismissed the Complaint in its entirety.  Appellant timely appealed, and oral argument was held on August 1, 2023.

## LEGAL STANDARD

A district court reviews a bankruptcy court's findings of fact for clear error and any conclusions of law *de novo*.  *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). Specifically, challenges to a bankruptcy court's rulings on a motion to dismiss are reviewed *de novo*.  *See In re Lyondell Chem. Co.*, 554 B.R. 635, 644 (S.D.N.Y. 2016).  "[S]tanding is the threshold question in every federal case, determining the power of the court to entertain the suit." *In re Gucci*, 126 F.3d 380, 387–88 (2d Cir. 1997).  "If a court perceives at any stage of the proceedings that it lacks subject matter jurisdiction, then it must take proper notice of the defect by dismissing the action."  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008).

## DISCUSSION

The commencement of a bankruptcy case creates an estate which includes "all legal or

equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).  As such, a debtor's causes of action vest with the bankruptcy estate at the time that its petition for relief is filed, and the representative of the bankruptcy estate has exclusive standing to assert causes of action on behalf of the estate.  *See BRS Assocs., LP v. Dansker*, 246 B.R. 755, 771–72 (S.D.N.Y. 2000); *see also In re Granite Partners, LP*, 194 B.R. 318, 323 (Bankr. S.D.N.Y. 1996) ("The trustee stands in the shoes of the debtor," and "may bring any suit that the debtor could have brought before bankruptcy.").  As the Second Circuit has observed, the "general bankruptcy policy of ensuring that all similarly-situated creditors are treated fairly" requires that the trustee have the first opportunity to pursue estate actions without interference from individual creditors.  *St Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 697 (2d Cir. 1989). "Where the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting the claim notwithstanding that, outside of bankruptcy, they have the right to do so."  *In re Granite Partners, LP*, 194 B.R. at 325.  Accordingly, individual creditors or shareholders lack standing to bring so-called 'derivative' actions—those which are derivative of a claim that may be brought on behalf of the estate.  *See id.* at 324.  Conversely, where a cause of action is a "personal, direct claim[] of [a] creditor[]," the trustee lacks standing to assert the claim.  *Id.*  And, as stated previously, where a plaintiff lacks standing, a court does not have subject matter jurisdiction to hear the case.  *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005).

Whether an action is direct or derivative is a question of state law.  *See St. Paul Fire & Marine Ins. Co.*, 884 F.2d 688, 700 (2d Cir. 1989) ("Whether the rights belong to the debtor or the individual creditors is a question of state law.").  In New York, a "plaintiff asserting a derivative claim seeks to recover for injury to the business entity;" whereas a "plaintiff asserting a direct

claim seeks redress for injury to him or herself individually." *Yudell v. Gilbert*, 99 A.D.3d at 113. A shareholder or creditor has no individual cause of action for an alleged wrong against the business entity, even if he or she suffers injury because of that wrong and "may ultimately share in the recovery." *Serino v. Lipper*, 123 A.D.3d 34, 39 (N.Y. App. Div. 2014); *see also Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004) (a key consideration is "whether the stockholder has demonstrated that he or she has suffered an injury that is not dependent on an injury to the corporation"); *Yudell*, 99 A.D.3d at 114 (adopting the test developed by the Delaware Supreme Court in *Tooley*).

Thus, in evaluating whether a claim is direct or derivative, New York courts consider "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)." *Serino*, 123 A.D.3d at 40. A creditor has a direct cause of action where it alleges that the defendant breached a duty owed to the plaintiff independent of the duties owed to the entity in bankruptcy. *See Venizelos v. Oceania Maritime Agency, Inc.*, 268 A.D.2d 291, 291 (N.Y. App. Div. 2000).

## I.     The Causes of Action Stated in the Complaint are Derivative

The Bankruptcy Court did not err in finding that each cause of action asserted in the Complaint was derivative, and that Appellant thus lacked standing to pursue them.

First, for the breach of fiduciary duty cause of action, as the Bankruptcy Court correctly observed, the Complaint is replete with references that make clear that the alleged harms were experienced by the members generally rather than Little Hearts exclusively. *See In re 305 East 61st Street Group LLC*, 644 B.R. at 86–87. The Complaint variously alleges, for instance, that Carter and Prime "Plac[ed] *the Company* into a Bankruptcy Proceeding," "Allow[ed] the Mortgage

to mature so that *Members* would be responsible for paying interest at the 24% default rate without calling on the *Members* to pay the debt," and that "Carter and Prime refused to accept the funds *Members* were required to pay the Mortgage pursuant to their Subscription Agreements with the *Company*."  Compl. ¶ 88 (emphasis added).  Contrary to Appellant's argument, the Complaint's allegations do not spell out how or why Carter and Prime owed any independent fiduciary duty solely to Little Hearts, rather than to the members of the Debtor more broadly.  Nor does Appellant's reliance on *Newman v. Newman*, 202 A.D.3d 442 (N.Y. App. Div. 2022), require a different result.  In that case, the court held that a claim for an independent breach of fiduciary duty to the plaintiff existed because of the parties' status as family members, such that the fiduciary duty at issue could not be inextricably embedded in the derivative claims stated in the complaint. *Id*. at 443–44.  Appellant here alleges no such theory for any similar independent breach of fiduciary duty owed to Little Hearts.

The second cause of action, for aiding and abetting the breach of fiduciary duty, fares similarly.  The Complaint sets forth the same factual allegations underlying the fiduciary duty cause of action, *see* Compl. ¶¶ 94, 96–97, and the Bankruptcy Court correctly concluded that, like the first cause of action, the allegations are "anchored in [Appellees'] alleged wrongful conduct as to the Company, with effects that impacted all Members' rights," 644 B.R. at 87.  Appellant cites *MDK Hijos Trust v. Nordlicht*, 2020 N.Y. Misc. LEXIS 1248, at *48–49 (Sup. Ct. March 10, 2020), for the proposition that its cause of action for aiding and abetting the breach of fiduciary duty should necessarily be construed as a direct claim.  But that is not so.  In *MDK Hijos Trust*, the court held merely that the complaint pleaded particularized facts giving rise to independent fiduciary duties that the defendant owed to the plaintiff.  *See id*. at *15; *see also id.* at *16–17 (outlining the independent fiduciary duties owed).  Here, however, the Complaint contains no

allegation that any independent fiduciary duty was owed by Carter and Prime to Little Hearts specifically, rather than to the members of the Debtor generally.

The third and fourth causes of action, for breach of contract and violation of the covenant of good faith and fair dealing, also belong to the Debtor (via the Creditor Trust) and are thus too derivative.  In alleging breach of contract, the Complaint alleges that Carter through "ownership, domination and control" caused "Prime, a Member and Manager to breach the Operating Agreement."  Compl. ¶ 105.  Appellant argues that paragraphs 9(I) and 9(F) of the Agreement form the basis of this cause of action, but each of those provisions relate to the Manager's duties to the Debtor and all members generally.  Paragraph 9(I) provides that the Manger is required to:

> discharge the Manager's *duties to the Company and to the other Members* in good faith and with the degree of care that an ordinarily prudent person and an experienced real estate developer in a similar position would use under similar circumstances.

Operating Agreement at ¶ 9(I) (emphasis added).  In like form, Paragraph 9(F) provides that the Manager is "required to devote as much time as is reasonably necessary to the management of *the Company's business* . . . to perform all work . . . as herein contemplated and provided."  *Id.* ¶ 9(F) (emphasis added).  Accepting the allegations in the Complaint as true—including that those contractual provisions unequivocally breached by Carter and Prime—such breach would, as the Bankruptcy Court held, involve "wrongful conduct as to the Company, with effects that impacted all Members' rights."  644 B.R. at 87.  The fourth cause of action, for violation of the covenant of good faith and fair dealing, similarly alleges that Appellees "violated their obligations to act in good faith and fair dealing required as Managers by acting in their personal interests, self-dealing and acting against *the Company and other Members*."  Compl. ¶ 113 (emphasis added).  The Complaint thus alleges that any violation of the covenant and fair dealing caused harm to the Debtor and its members generally, and it is also a textbook derivative claim.  *In re Granite*

*Partners, LP*, 194 B.R. at 324.

The remaining claims were also appropriately held to be derivative by the Bankruptcy Court, and Appellant lacks standing to bring them as well.  Count five purports to assert a cause of action against Carter individually on the theory that he is the alleged alter ego of Prime and the eventual purchaser of the building at 305 East 61st Street, Lazarus 5.  *See* Compl. ¶¶ 117–27.  But "there is no independent cause of action for alter-ego liability," which is instead a "veil piercing claim" meant solely to "impos[e] liability on an underlying cause of action."  *Ocampo v. 455 Hospitality LLC*, 2021 WL 4267388, at *10 (S.D.N.Y. Sept. 20, 2021) (citing *Peacock v. Thomas*, 516 U.S. 349, 354 (1996)).  Because the wrongs underpinning any alter ego liability against Carter are the same as those alleged against Appellees in the other causes of action, they do not plead any direct, individualized harm to Little Hearts.  *See* Compl. ¶ 121 ("Carter abused the privilege of doing business in the corporate form to perpetrate wrongs against Plaintiff and others.").  So too, count six, for unjust enrichment, merely repeats each of the preceding allegations in the Complaint to assert that Appellees engaged in inequitable conduct causing harm to the Debtor members generally, and that they were unjustly enriched as a result.  *See* Compl. ¶¶ 128, 130–31.  Nor does Appellant's reliance on *Scott v. Pro Mgt. Servs. Grp.*, 2 N.Y.S.3d 90 (App. Div. 2015), salvage its argument.  In *Scott*, while the court did hold that an unjust enrichment claim was direct, it did so expressly because "all other owners of the holding companies received revenues, licensing fees, royalties, and other consideration for using the companies' trademarks, to plaintiff's exclusion." *Id*. at 91.  Here, Appellees' alleged mismanagement of the Debtor resulted in harm to all equity members—not only Little Hearts, but also Onestone and Pollock.

But even assuming, *arguendo*, that any of these six causes of action were nominally pled as direct claims, any harm to Little Hearts would be so "confused with or embedded in" a harm to

the Debtor and all its members that it cannot be maintained as a direct claim under New York law. *Serino*, 123 A.D.3d at 40. The New York Court of Appeals has long held that where a complaint's allegations "confuse a shareholder's derivative and individual rights," it should "be dismissed." *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985); *see also Maldonado v. DiBre*, 35 N.Y.S.3d 731, 735 (App. Div. 2016) (finding, where an "individual claim is 'confused' or 'embedded' within [a] derivative claim, then it must be dismissed"); *Serino*, 123 A.D.3d at 40 ("[E]ven where an individual harm is claimed, if it is confused with or embedded in the harm to the corporation, it cannot separately stand."). To be sure, as Appellant argued in its briefs—and emphasized again at oral argument—direct claims *can*, in certain instances, be asserted based on contractual rights bestowed upon members of an LLC. *See, e.g.,* Opening Br. at 12–13; Tr., Oral Arg. August 1, 2023, at 40:11–23 (citing *Weiner v. King*, 43 Misc. 3d 1203(A) (N.Y. Sup. Ct., N.Y. Cty. 2014) and *Ruffalo v. Transtech Serv. Partners Inc.*, 2010 WL 3307487, at *9 (Del. Ch. 2010) ("Claims based upon contractual rights of the shareholder which exist separately from any right of the corporation are direct claims.")). But where an otherwise independent claim is "inextricably entangled with derivative claims," it should be dismissed as derivative. *Accredited Aides Plus, Inc. v. Program Risk Mgmt., Inc.*, 46 N.Y.S.3d 246, 258 (App. Div. 2017).

That is the case here. Because any injuries to Little Hearts as pleaded in the Complaint are based on allegations of Appellees' mismanagement of the Debtor, and thereby caused harm to all members, any damages suffered were suffered by all members in accordance with their respective membership interest. *See In re 305 East 61st Street Group LLC*, 644 B.R. at 92–93 (Bankruptcy Court finding same); *see also Serino*, 123 A.D.3d at 39–40 (observing that a "claim must be factually supportable by more than complaints that conflict [a claimant's] derivative and individual rights"); *Yudell*, 949 N.Y.S.2d at 384 ("To the extent, if any, that plaintiffs have asserted direct

claims, they are embedded in an otherwise derivative claim for partnership waste and mismanagement.").

In sum: because the Bankruptcy Court did not err in finding the causes of action derivative, Appellant lacks standing, and its underlying Complaint was thus appropriately dismissed for lack of jurisdiction.

## II.   Appellant Waived the Argument that it was Conferred Real Property Rights

On appeal to this Court, Appellant argues in the alternative—and for the very first time—that the Operating Agreement also granted it "rights to real property, and not personal property as is a membership interest in an LLC or a share in a corporation." Opening Br. at 13. The argument is premised on the notion that the exclusive rights each member was granted to designated floors in the building at 305 East 61st somehow conveyed real property rights to each member's respective floors, and that any cause of action stating a claim for interference with or violation of those real property rights is necessarily a direct, rather than derivative, cause of action. *See id*. at 13–15. But Appellant did not raise this argument below to the Bankruptcy Court, nor does the Complaint contain any allegation that the Operating Agreement in any way conferred an interest in real property. Therefore, as an initial matter, the argument has been waived. As the Second Circuit has observed, although a court has "discretion to consider a waived argument where necessary to avoid manifest injustice, the circumstances normally do not militate in favor of an exercise of discretion to address … new arguments on appeal where those arguments were available to the [party] below and they proffer no reason for their failure to raise the argument below." *In re Johns-Manville Corp*., 759 F.3d 206, 219 (2d Cir. 2014). Thus, "any argument not raised in the bankruptcy court is waived and will not be considered by the district court, unless such waiver would result in manifest injustice." *In re Ampal-American Isr. Corp.*, 554 B.R. 604,

617–18 (S.D.N.Y. 2016).

There would be no manifest injustice by finding waiver of the argument here. Indeed, Appellant's argument to the Bankruptcy Court below—that the Complaint stated a direct cause of action based in contractual rights, rather than any real property right—appears to stand in stark contrast to the argument that it now raises on appeal. *See* Bankr. Rec. 796, Sept. 9, 2021 Hearing Tr. at 64:3–6 (Appellant arguing: "in any event, these rights, they don't have to be property rights. The rights were contractual in nature, which gave Little Hearts direct standing to protect those rights."); *id.* at 780, Tr. at 48:4–7 ("[T]he complaint doesn't seek the property back, Your Honor. What it seeks are money damages related to the rights, the contractual rights that Little Hearts lost because of what is alleged that the defendants did."); *id.* at 774, Tr. at 42:3–6 ("Little Hearts' claims are based on contractual rights that only it has under the operating agreement."). And, given the particularly litigious history between Appellant and Appellees, with more than a half-dozen separately filed actions related to the same underlying claims of mismanagement of the Debtor across multiple fora, it can hardly be said that the real property argument was not "available to the [Appellant] below." *In re Johns-Manville Corp.*, 759 F.3d at 219.

Finally, even were the argument not waived, it would nonetheless fail, as the plain terms of the Operating Agreement did not convey real property rights to the members. Rather, the designation of specific units for limited purposes based upon a member's capital contribution reflected a membership interest in the Debtor. *See* Operating Agreement § 5 ("The respective percentage interest of the Members (the 'Percentage Interests') of the Company shall be as set forth in Exhibit 'A.'); *id.* § 4(f)(i) (providing Little Hearts a "20% Percentage Interest in the Company, together with the right to retain, use, occupy, develop and acquire the condominium units" on its designated floors). Indeed, the Operating Agreement specifically sets out a priority

for the distribution of proceeds in the event that a condominium unit in the building were to be sold. *Id.* ¶ 21.2. That is, any profits recognized from the sale of any units were to go first to the Debtor generally and then—only after a member's obligations to the Debtor were fully repaid— could any member recover individually. *Id.* Were the Operating Agreement to have conveyed real property rights to designated floors, as Appellant now appears to argue, any sale proceeds would have flowed directly to the owning member. The fact that it did not underscores that the rights were instead contractual in nature, and tied to each member's interest in the Debtor as a matter of "pure equity ownership." *In re 305 61st Street Group LLC*, 644 B.R. at 92. And, as stated previously, any violation of a right held as a member in the Debtor generally is definitionally derivative. *See Serino*, 123 A.D.3d at 39 (observing that a member has no direct cause of action for an alleged wrong against the business entity, even if he or she suffers injury because of that wrong and "may ultimately share in the recovery").

## CONCLUSION

Accordingly, for the foregoing reasons, the decision of the Bankruptcy Court is affirmed. The Clerk of Court is respectfully directed to close this action.

SO ORDERED.

Dated:     August 11, 2023
           New York, New York

                                              Hon. Ronnie Abrams
                                              United States District Judge